UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                          )
BEGASHAW AYELE,                           )
                                          )
          Plaintiff,                      )
                                          )
               v.                         )          Civil Action No. 22-11798-NMG
                                          )
SECURITY SERVICES OF                      )
CONNECTICUT, <u>et al.</u>,               )
                                          )
          Defendants.                     )
_____)

<u>REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS TO DISMISS</u>
[Docket Nos. 13, 17, 19, 22, 24, 28]

April 18, 2022

Boal, M.J.

       <u>Pro se</u> plaintiff Begashaw Ayele asserts claims of discrimination in violation of Title VII,

the Americans with Disabilities Act ("ADA") and Massachusetts law, violations of 42 U.S.C. §

1983, and breach of contract against various defendants.  Defendants Security Services of

Connecticut ("SSC"), Peter H. Ryba, Tammy Allard, the Massachusetts Commission Against

Discrimination ("MCAD"), Neldy Jean-Francois, Sarah Biglow,[1] and the Massachusetts

Department of Unemployment Assistance ("MDUA") have moved to dismiss the claims against

_____

[1] The MCAD, Jean-Francois, and Biglow are collectively referred to as the "MCAD
Defendants."

them.  Docket Nos. 17, 19, 22, 24, 28.[2, 3]  For the following reasons, this Court recommends that

the case be reassigned to Judge Young and that he grant the motions.

I.   FACTUAL BACKGROUND[4]

On or about May 2, 2019, Ayele applied for a security guard position at SSC.  Amended

Complaint ("AC") at ¶ 12.  Ayele met with the Recruitment Manager, Henry A. Wilkins.  Id.  He

again met with Wilkins on July 8, 2019 for an interview and to complete employment forms.  Id.

at ¶ 13.  At that time, Ayele told Wilkins about his difficulty in standing or walking for extended

periods of time.  Id.  Wilkins told Ayele that the job required standing outside of a dispensary

store and there is a chair where employees sit for "break especially on inclement weather."  Id. at

---

[2] On February 6, 2023, Judge Gorton referred the motions to the undersigned.  Docket Nos. 36, 37.

[3] Citations to "Docket No. ___" are to documents appearing on the Court's electronic docket. They reference the docket number assigned by CM/ECF, and include pincites to the page numbers appearing in the top right corner of each page within the header appended by CM/ECF.

[4] Because this matter is before the Court on a motion to dismiss, the Court "recite[s] the facts as alleged in the plaintiff['s] complaint, accepting all well-pleaded facts as true and drawing all reasonable inferences in favor of the non-moving party."  Abdisamad v. City of Lewiston, 960 F.3d 56, 57 (1st Cir. 2020) (quoting Squeri v. Mount Ida Coll., 954 F.3d 56, 61 (1st Cir. 2020)); see also Valentin v. Hospital Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001) (citations omitted) (when ruling on a sufficiency challenge under Rule 12(b)(1), "the court must credit the plaintiff's well-pleaded factual allegations . . . draw all reasonable inferences from them in her favor, and dispose of the challenge accordingly.").  "While the court generally may not consider materials outside the pleadings on a Rule 12(b)(6) motion, it may consider such materials on a Rule 12(b)(1) motion."  Gonzalez v. United States, 284 F.3d 281, 288 (1st Cir. 2002).  In addition, there are exceptions to the rule prohibiting consideration of materials outside the complaint on a Rule 12(b)(6) motion.  See Douglas v. Hirshon, 63 F.4th 49, 57 (1st Cir. 2023) (citation omitted) ("Under certain 'narrow exceptions' – including for 'documents the authenticity of which are not disputed by the parties' and 'official public records' – 'some extrinsic documents may be considered without converting a motion to dismiss into a motion for summary judgment.'").  Some of the Defendants have attached documents to their motions to dismiss.  Similarly, Ayele has attached documents to his opposition, some of which overlap with those submitted by the Defendants.  I address the propriety of considering each of these documents below.  To the extent that a document is not addressed, that is because the document is not material to my analysis.

¶ 14.

Wilkins conditionally offered Ayele a job and told him to go to the Mayflower Medicinal Store in Holliston, Massachusetts to complete additional forms and pick up his uniforms.  Id. at ¶ 15.  On August 7, 2019, Ayele went to Mayflower Medicinal.  Id. There, he met with defendant Peter H. Ryba, an operations manager, completed forms,[5] and discussed work schedules.  Id. at ¶ 16.  Ayele alleges that he only met with Ryba at that time.  Id.  He also alleges that Ryba's and defendant Tammy Allard's affidavits submitted to the MCAD contained false statements regarding Ayele's disability and the availability of a chair.  Id. at ¶¶ 16-17.  According to Ayele, Allard, the site supervisor, was not present at this meeting.  Id. at ¶ 17; Docket No. 25-6.

Ayele signed a Conditions of Employment form, setting his work schedule as 38 hours per week at a pay rate of $16.00 per hour.  Docket No. 25-6.[6]  The Conditions of Employment, however, also provided that:

> I further understand that it may become necessary for SSC to change the location where my work is performed.  I agree in advance, that should it become necessary for whatever reason (client or employee request, failure to successfully complete training requirements, disciplinary reassignment, etc. . .), I will accept any reasonable change in my work location and/or shift hours in order to maintain my employment.

---

[5] SSC states that the forms included a Job Description for Security Officer and has attached a copy as Exhibit D to its motion.  Docket No. 25 at 8 and Docket No. 25-4.  This Court has not considered the document as it does not appear to fall under any of the exceptions to the rule that the Court may not consider documents outside of the complaint.  Similarly, this Court has not considered the Security Officer Position Summary (Docket No. 25-5) or the SSC Employee Handbook (Docket No. 25-7).

[6] This Court may consider this document as a document "sufficiently referred to in the complaint."  See Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993).  In addition, when, as here, "a complaint's factual allegations are expressly linked to-and admittedly dependent upon-a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)."  Beddall v. State Street Bank and Trust Co., 137 F.3d 12, 17 (1st Cir. 1998) (citations omitted).  Ayele does not dispute the authenticity of this document and relies on it in connection with his breach of contract claim.  See AC at ¶ 18; Docket No. 30-6; Docket No. 46 at 3, 7.

Docket No. 25-6 at 2.  Ayele worked a full 38-hour workweek his first full week of work but thereafter his assigned weekly work hours diminished.  Id. at ¶ 19.  He worked 25.75 hours the week ending August 30, 2019, 19 hours the week ending September 6, 2019, 26.5 hours the week ending September 13, 2019, and 24 hours the week ending September 20, 2019.  Id.  He alleges that a white female coworker worked a total of 525.75 hours while he only worked 314.25 hours.  Id.[7]

On August 29, 2019, Ayele sent an email message to Wilkins asking that security guards "be permitted to sit and work the security job as that will not affect the job itself, the company SSC. Inc. or the contracting company, Mayflower."  Id. at ¶ 20 and Docket No. 25-8.[8]  Wilkins responded, in relevant part, as follows:

> As we discussed during your interview, the job required time performing short patrols and time standing post.
> You are permitted to take breaks and sit as needed especially when weather conditions are marginal, however I know the client would not like the look of a chair being placed outside unless you are talking about a chair in the lobby which had been acceptable.

Docket No. 25-8.[9]

---

[7] Ayele does not specify the time period during which those hours were worked.  He also states that effective September 1, 2019, work hours for all SSC employees were reduced at the Mayflower site because the facility reduced its hours of operation.  AC at ¶¶ 21-22.  Accordingly, he is not pursuing a claim relating to a reduction in work hours after September 1, 2019.  Id.

[8] This Court may consider the email as a document "sufficiently referenced and/or relied upon in the complaint."  Rivera v. Kress Stores of Puerto Rico, Inc., 30 F.4th 98, 102 (1st Cir. 2022) (citations omitted).

[9] Although, in his Amended Complaint, Ayele references only his email to Wilkins, "it is appropriate to consider the entirety of this email chain, as it provides necessary context for and is intimately related to material that is quoted in the Amended Complaint."  Maron v. Legal Aid Society, 605 F.Supp.3d 547, 553 n.2 (S.D.N.Y. June 2, 2022).

Ayele alleges that, after his hours were systematically reduced from one week to the next, he decided to work part-time in order to search for another job in the afternoon. Id. at ¶ 20. Therefore, he asked his supervisor, Allard, for a weekend only shift, consisting of 13 hours on Saturdays and 10 hours on Sundays for a total of 23 hours. Id. Allard originally agreed to the request but then she mistakenly divided the hours on the Saturday shift between Ayele and Young. Id. After Ayele brought this to Allard's attention in a text message on September 21, 2019, Allard corrected the error and assigned Ayele the 23-hour weekend shift he had requested. Id.

In the same text message, Ayele told Allard that the two weekend days are long hours and "I must use a sitting chair outside the dispensary rather than the inside because I can't see what is going on outside as customer's parking was behind the dispensary store." Id. Allard did not respond to Ayele's request regarding using a chair outside of the dispensary rather than inside. Id.

On Sunday, November 17, 2019, Ayele sent a text message to Allard asking whether he could take a bike that he felt had been abandoned at the dispensary. Id. at ¶ 23. Allard told Ayele that Mayflower's policy prohibited him from taking the bike. Id. When Ayele continued to argue with Allard after she informed him that he could not take the bike, Allard asked Ayele if he was calling her stupid. Id.

On November 23, 2019, Raymond Ahern told Ayele that he "should not use his chair to sit inside or outside the dispensary but take it home." Id. at ¶ 24. After hearing this and because he could not work a 13-hour shift without sitting, Ayele decided to resign and left with his chair and a "lawsuit threat." Id. On November 26, 2019, Ayele received an email message from the Assistant HR Director at SSC accepting his resignation. Id. at ¶ 25.

5

On February 11, 2020, Ayele filed a complaint with the MCAD against SSC and Mayflower alleging retaliation and discrimination based on race, color, national origin, and disability.  Id. at ¶ 9; Docket No. 18-1; see also Docket No. 23-1; Docket No. 25-1; Docket No. 25-2.[10]  Ayele alleges that the MCAD did not allow him to conduct discovery during its investigation of his claims.  AC at p. 15.  He also claims that, during her investigation, MCAD's investigator communicated with the respondents without Ayele's participation.  Id.  On September 1, 2019, MCAD notified Ayele that it would not complete its investigation within eighteen months due to its case load.  Id. at ¶ 9.

On July 29, 2022, the MCAD issued an investigative disposition recommending a finding of lack of probable cause as to Ayele's claims (the "Disposition").  Id. at ¶ 10; Docket No. 18-1. The Disposition was issued by defendant Jean-Francois in her role as investigating commissioner and lists defendant Sarah Biglow as the MCAD investigator.  Docket No. 18-1 at 9.

MCAD mailed the Disposition to Ayele on August 4, 2022.  AC at p. 15.  Ayele received the Disposition by mail on August 9, 2022.  Id.  Ayele alleges that the adverse Disposition was issued by the MCAD in retaliation for Ayele's threat to hold a community demonstration against MCAD.  Id.  Nevertheless, Ayele chose not to appeal the Disposition.  Id.

Ayele took a second security job with Sodexo USA in September 2019 after SSC cut his hours.  AC at p. 16.  Ayele's managers at Sodexo accused him of insubordination and allowing an employee to access the workplace with an expired identification card.  Id. at p. 16-17.  Ayele told his supervisor that he was lying.  Id. at p. 17.  Ayele told his supervisor that he "kn[ew] how

---

[10] This Court may consider documents from the MCAD proceedings.  See Araujo v. UGL Unicco-Unicco Operations, 53 F.Supp.3d 371, 375 n.1 (D. Mass. 2014) (considering MCAD charge of discrimination in deciding motion to dismiss).

Arab lied because I saw the <u>Iraqi</u> <u>General</u> (in the American TV) lying to the Iraqi people." <u>Id.</u> (emphasis in original).  After this incident, Sodexo suspended Ayele for an indefinite period and ultimately terminated him on November 21, 2022.  <u>Id.</u>

Ayele applied for unemployment insurance.  <u>Id.</u>  When asked, Ayele told the MDUA employee assisting him that he was terminated for "retaliation and disability discrimination."  <u>Id.</u> at p. 18.  The unnamed MDUA employee told Ayele that she would process his claim and that he should begin searching for three jobs per week.  <u>Id.</u>

Two weeks later, Ayele had not received unemployment assistance, and was told that he needed to submit further identification.  <u>Id.</u>  Ayele's claim for unemployment assistance was further delayed because his former employer had not submitted the required documentation.  <u>Id.</u> Eventually, MDUA denied Ayele's claim because terminated employees were not entitled to receive unemployment insurance.  <u>Id.</u>

Ayele disagreed with MDUA's denial of his claim and argued that unemployment insurance could not be withheld when the termination was not the fault of the employee. <u>Id.</u>  His claim was remanded to the initial claim processor for redetermination.  <u>Id.</u>  On December 28, 2022, MDUA informed Ayele that he could prepare witnesses and exhibits to argue his case at a hearing.  <u>Id.</u>  Ayele went to MDUA to inquire when the hearing date would be, but MDUA issued a Notice of Disqualification that same day.  <u>Id.</u>  On January 10, 2023, Ayele delivered a letter to MDUA that stated his intent to "find other ways including seeking judicial remedy" to receive payment.  <u>Id.</u> at p. 19.

Ayele has named nine defendants: (1) SSC; (2) Ryba; (3)Allard; (4) Mayflower; (5) Andrew Plante, National Director of Security & Risk Management for Mayflower; (6) MCAD; (7) Neldy Jean-Francois; (8) Sarah Biglow; and (9) MDUA.  He has listed four claims in his

Amended Complaint: (1) Title VII and/or M.G.L. c. 151B; (2) 42 U.S.C. § 1983; (3) ADA; and (4) breach of contract.  It appears that he is asserting the Title VII and ADA claims against SSC, Mayflower, and Plante; the Chapter 151B claim against SSC, Ryba, and Allard;[11] the Section 1983 claims against MCAD, Jean-Francois, Biglow, and MDUA; and the breach of contract claim against SSC.

II.     STANDARD OF REVIEW

    A.     Rule 12(b)(1)

        The MCAD Defendants and MDUA have moved to dismiss the claims against them pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.  Rule 12(b)(1) is the proper vehicle for challenging the court's subject-matter jurisdiction, including on the basis of sovereign immunity.  See Valentin, 254 F.3d at 362-363.  Where, as here, the defendant presents a facial challenge to subject-matter jurisdiction, the Rule 12(b)(1) analysis is similar to the analysis under Rule 12(b)(6) of the Federal Rules of Civil Procedure: the court accepts the well-pleaded factual allegations in the complaint as true and views them, and the reasonable inferences drawn from them, in the light most favorable to the plaintiff, asking whether the complaint states a "plausible" claim of federal subject-matter jurisdiction.  Cebollero-Bertran v. Puerto Rico Aqueduct and Sewer Auth., 4 F.4th 63, 69 (1st Cir. 2021) (citing Valentin, 254 F.3d at 363).

    B.     Rule 12(b)(6)

        A complaint must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To survive a motion to dismiss, the complaint "must contain sufficient factual matter . . . to state a claim to relief that is plausible on

---

[11] While it appeared from the Amended Complaint that Ayele was asserting the Title VII and ADA claims against Ryba and Allard as well, he has clarified that he is in fact not doing so.  See Docket No. 48 at 4-5; Docket No. 50 at 5.

its face." Abdisamad, 960 F.3d at 59 (quoting Saldivar v. Racine, 818 F.3d 14, 18 (1st Cir. 2016)). "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." Id. (quoting Barchock v. CVS Health Corp., 886 F.3d 43, 48 (1st Cir. 2018)).

In assessing the sufficiency of the complaint, the Court must first "strip away and discard the complaint's conclusory legal allegations." In re Montreal, Maine & Atlantic Railway, Ltd., 888 F.3d 1, 6 (1st Cir. 2018) (quoting Shay v. Walters, 702 F.3d 76, 82 (1st Cir. 2012)). The Court must then "determine whether the remaining facts allow it 'to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Id. (quoting Jane Doe No. 1 v. Backpage.com, LLC, 817 F.3d 12, 24 (1st Cir. 2016)).

A document filed by a pro se party "is to be liberally construed, and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)) (internal quotation marks omitted). See also Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice.").

III.   ANALYSIS

     A.   Ayele's Claims Against The MCAD And
           MDUA Are Barred By Sovereign Immunity

Ayele brings claims against the MCAD and the MDUA under 42 U.S.C. § 1983. Under 42 U.S.C. § 1983, an aggrieved individual may sue persons who, acting under color of state law, abridge rights, immunities, or privileges created by the Constitution or the laws of the United States. Johnson v. Rodriguez, 943 F.2d 104, 108 (1st Cir. 1991) (citing Pittsley v. Warish, 927 F.2d 3, 6 (1st Cir. 1991)). Absent consent, however, the Eleventh Amendment bars a suit against "the State or one of its agencies or departments . . . regardless of the nature of the relief sought."

Pennhurst State School and Hosp. v. Halderman, 465 U.S. 89, 100 (1984); Poirier v. Mass. Dep't of Corr., 558 F.3d 92, 97 (1st Cir. 2009) ("States and their agencies are entitled to sovereign immunity 'regardless of the relief sought.'").  Section 1983 does not abrogate the Eleventh Amendment immunity of a state and its agencies from suit in federal court, Quern v. Jordan, 440 U.S. 332, 338-345 (1979), and it is well-settled that "neither a State nor its officials acting in their official capacities are 'persons' for purposes of Section 1983."  Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989).

As the MCAD[12] and the MDUA are state agencies, Ayele's Section 1983 claim against them is barred by sovereign immunity.  See, e.g., Johnson, 943 F.2d at 108-109 (MCAD is immune from Section 1983 action); Cross v. Executive Office of Labor and Workforce Dev., No. 12-10424-JCB, 2012 WL 1232192, at *6 (D. Mass. Apr. 11, 2012) (federal claims against the MDUA barred because it was entitled to sovereign immunity).  Accordingly, I recommend dismissal of Ayele's claims against the MCAD and the MDUA.

> B.     Ayele Has Failed To State A Section 1983 Claim
>        Against The MCAD Defendants And The MDUA

A plaintiff claiming a Section 1983 violation must allege that a person or persons acting under color of state law deprived him of a federal or statutory right.  Id. (citing Rockwell v. Cape Cod Hosp., 26 F.3d 254, 256 (1st Cir. 1994)).  If a plaintiff fails to allege facts sufficient to establish either the deprivation of a federal right or that the defendant acted under color of state law, then the Section 1983 claim is subject to dismissal.  Id.

---

[12] To the extent that Ayele seeks monetary damages under Section 1983 against Jean-Francois and Biglow in their official capacities, such claims are also barred by sovereign immunity.  See Lewis v. West Roxbury Dist. Court, No. 12-11544-JLT, 2013 WL 4854117, at *5 n.10 (D. Mass. Sept. 10, 2013) (claims against state officials in their official capacities must be read as having been brought against the state and are therefore barred by sovereign immunity).

Here, Ayele has not identified the constitutional right that is the basis of his Section 1983 claim let alone pled facts sufficient to establish a deprivation of a constitutional right by the MCAD Defendants or the MDUA. Accordingly, his Section 1983 claims should be dismissed for failure to state a claim on this basis alone.

      C.      Jean-Francois And Biglow Are Immune Pursuant
            To The Doctrine Of Quasi-Judicial Immunity

Ayele's claims against Jean-Francois and Biglow are barred by quasi-judicial immunity. "The doctrine of quasi-judicial immunity provides absolute immunity for those who perform tasks that are inextricably intertwined with the judicial function." Nystedt v. Nigro, 700 F.3d 25, 30 (1st Cir. 2012) (citations omitted). "This doctrine is rooted in the wise idea that those who perform adjudicative functions 'require a full exemption from liability.'" Id. (citing Butz v. Economou, 438 U.S. 478, 508 (1978)).

"Judicial acts are those that are 'intimately associated' with the judicial function." Id. at 31 (citing Burns v. Reed, 500 U.S. 478, 486 (1991)). "For this purpose, the judicial function has been defined as the adjudication of disputes between parties." Id. (citing Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 435 (1993)).

The MCAD is a state administrative body that investigates and rules upon discrimination claims by investigating, holding hearings, and issuing decisions. See M.G.L. c. 151B § 3. Ayele appears to be suing Jean-Francois because she is a commissioner at the MCAD and made a finding of lack of probable cause regarding Ayele's charge of discrimination. See Docket No. 18-1 at 9. Similarly, he appears to be suing Biglow because she is an investigator at the MCAD who recommended a finding of lack of probable cause in Ayele's case. See id. As such, they are being sued for adjudicatory acts and are, therefore, absolutely immune under the doctrine of quasi-judicial immunity. See, e.g., D'Angelo v. New Hampshire Supreme Court, 740 F.3d 802,

808 (1st Cir. 2014) (commissioner appointed by family court to investigate and produce report on husband's financial condition entitled to quasi-judicial immunity); <u>Cosby v. Lee County</u>, 55 F.Supp.3d 1393, 1399 (M.D. Fla. 2014) (agency officials conducting EEOC investigations entitled to quasi-judicial immunity).  Accordingly, Ayele's claims against Jean-Francois and Biglow are also subject to dismissal on this basis.

> D.    Ayele Has Failed To State A Claim Of Discrimination
>        <u>Under Title VII, The ADA, Or M.G.L. c. 151B</u>
>
> 1.    Ayele Has Failed To State A Claim Of Discrimination
>        <u>On The Basis Of His Race, Gender, or National Origin</u>

Title VII and M.G.L. c. 151B, § 4 generally prohibit employers from discriminating against an employee based on his race, color, religion, sex, or national origin.  42 U.S.C. § 200e-2(a); M.G.L. c. 151B, § 4(1).  In order to state a claim for employment discrimination under those statutes, the plaintiff must sufficiently allege that he suffered an adverse employment action because of the plaintiff's protected characteristic (such as race or sex) and some adverse employment action was taken against the plaintiff.  <u>See</u> <u>Alicea v. North Am. Central School Bus, LLC</u>, 232 F.Supp.3d 213, 215 (D. Mass. 2017).  It is not sufficient to allege that the plaintiff is a member of a protected class and suffered an adverse employment action; he must allege facts indicating a relationship between the plaintiff's protected characteristic and the adverse employment action.  <u>Id.</u>  "Put simply, the complaint has to allege a plausible basis for a claim of *discrimination*, not just unfair treatment."  <u>Id.</u> (emphasis in original).

Here, Ayele alleges, in a conclusory fashion, that he was discriminated against on the basis of his race, sex, and national origin when his hours were reduced from full time to part-time.  <u>See</u> AC at p. 11.  He has not alleged any facts, however, connecting his race, sex, and national origin to the change in his work schedule.  Because Ayele has not alleged a causal

connection between the change in work schedule and his race, sex, or national origin, he has failed to state a plausible claim under Title VII or Chapter 151B.

To the extent that Ayele is asserting a claim of a hostile work environment, he has also failed to allege any facts to support such a claim.  In order to establish a hostile work environment, the plaintiff has to show that his "workplace [was] permeated with discriminatory intimidation, ridicule, and insult that [was] sufficiently severe or pervasive to alter the conditions of . . . [his] employment and create an abusive working environment."  Quiles-Quiles v. Henderson, 439 F.3d 1, 7 (1st Cir. 2006) (citations omitted).  Ayele's Amended Complaint is devoid of any facts that could support such a claim.

   2.   Ayele Has Failed To State A Failure To Accommodate Claim

"The ADA requires employers to make 'reasonable accommodations' to the known physical or mental limitations of an otherwise qualified individual with a disability."  Garcia-Ledesma v. Centro, 916 F.Supp.2d 161, 172 (D.P.R. 2012) (citing 42 U.S.C. § 12112(b)(5)(A)). In order to state a claim for failure to accommodate, a plaintiff must allege that (1) he suffers from a disability; (2) he could perform the essential functions of his job with reasonable accommodations; (3) he requested reasonable accommodations; and (4) his employer, despite knowing of his disability, denied his request for reasonable accommodations.  Callbeck v. Fallon Community Health Plan, Inc., 480 F.Supp.3d 308, 313 (D. Mass. 2020) (citations omitted).[13] "To trigger the ADA, an employee cannot merely make a 'mundane request for a change in the workplace,' the request must be 'sufficiently direct and specific,' and 'explain how the accommodation requested is linked to some disability."  Garcia-Ledesma, 916 F.Supp.2d at 172

_____

[13] The Massachusetts handicap discrimination statute, M.G.L. c. 151B, § 4, is "nearly identical to the ADA and, therefore, courts analyze the statute in the same manner as the ADA.  Audette v. Town of Plymouth, MA, 858 F.3d 13, 20 n.8 (1st Cir. 2017).

(citing <u>Reed v. LePage Bakeries, Inc.</u>, 244 F.3d 254, 261 (1st Cir. 2001)).

      Here, Ayele has failed to plausibly allege that he requested a reasonable accommodation or that SSC failed to provide a reasonable accommodation.  Ayele alleges that, during his interview, he told Wilkins about his "difficulty to stand or walk for extended periods of time." AC at ¶ 13.  Wilkins informed Ayele that the job required standing outside the dispensary but there was a chair where employees could sit for breaks.  <u>Id.</u> at ¶ 14.  Ayele then visited the site and decided to take the job because, in his assessment, the job would not require walking long distances.  <u>Id.</u>  Later, in an email to Wilkins, Ayele requested that all security guards be permitted to sit outside the dispensary to perform their jobs.  Docket No. 25-8 at 3.  He also expressed a preference to use his own chair, rather than the chair provided by SSC.  <u>Id.</u> at 2; <u>see also</u> AC at p. 15.  The Amended Complaint, therefore, is devoid of any allegations making a direct and specific request for an accommodation linked to a disability.

      Ayele has also failed to plausibly allege that SSC failed to provide a reasonable accommodation.  Even assuming that his vague request to be able to sit was a request for a reasonable accommodation, Ayele has not alleged that SSC denied his request.  Rather, he appears to complain that he was not allowed to use his own chair but had to use the chair provided by SSC.  <u>See</u> AC at p. 11.  Once again, he fails to link his request to any disability. Ayele does not allege, for example, that he requested to use his own chair because the chair provided by SSC was insufficient to help with his back issues.  Accordingly, he has failed to sufficiently plead a failure to accommodate claim under the ADA or Massachusetts law.

      3.    <u>Ayele Has Failed To State A Plausible Claim For Retaliation</u>

      To establish a prima facie case of retaliation, a plaintiff must show that (1) he engaged in protected activity, (2) he suffered an adverse employment action, and (3) a causal link existed

between the protected activity and the adverse job action. Callbeck, 480 F.Supp.3d at 314 (citations omitted). Ayele alleges that SSC retaliated against him in four ways: (1) by hiring him "late" after it learned that he had sued his prior employer and prevailed; (2) by reducing his work hours; (3) by not allowing him to take items that had been discarded as trash by a client; and (4) by not allowing him to use his own chair and terminating his employment as a result. AC at p. 12-13. For the following reasons, Ayele has not plausibly alleged that any of these actions constituted retaliation.

A plaintiff asserting a retaliation claim based on a failure-to-hire must, in order to establish an adverse employment action, make a prima facie showing that (1) he applied for a particular position, (2) which was vacant and (3) for which he was qualified, and (4) that he was not hired for that position. Velez v. Janssen Ortho, LLC, 467 F.3d 802, 809 (1st Cir. 2006). Here, Ayele was in fact hired for the position for which he applied so he cannot establish a retaliation claim based on the first incident.

With respect to the reduction in hours, Ayele has failed to allege any facts that would show a causal connection between any protected activity and the reduction in hours. Indeed, he has acknowledged that, after September 1, 2019, SSC reduced all employee's hours. AC at ¶ 22 and p. 11. Not allowing Ayele to take items that had been discarded as trash by a client is not an adverse employment action that would give rise to a retaliation claim. See Morales-Vallellanes v. Potter, 605 F.3d 27, 35 (1st Cir. 2010) (internal citations omitted) ("An 'adverse employment action' is one that 'affect[s] employment or alter[s] the conditions of the workplace,' and typically involves discrete changes in the terms of employment, such as 'hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing significant change in benefits.'"). Therefore, the second and third instances of alleged retaliation

do not plausibly state a claim.

Finally, Ayele alleges that SSC retaliated against him by not allowing him to use his own chair and terminating him as a result.  <u>See</u> AC at p. 13.  He has not alleged, however, any protected activity.  While a request for a reasonable accommodation may constitute a protected activity, see <u>Garcia-Ledesma</u>, 916 F.Supp.2d at 172-173, as discussed above, Ayele has not plausibly alleged that he requested a reasonable accommodation.  In addition, he has also not plausibly alleged an adverse employment action.  Despite his conclusory allegation that he was terminated, he acknowledges that he in fact resigned from his position.  <u>See</u> AC at ¶¶ 24-25.  To the extent that he is attempting to bring a claim for constructive discharge, he has again failed to allege sufficient facts to sustain such a claim.

To establish a claim of constructive discharge, Ayele must show that his working conditions were "so onerous, abusive, or unpleasant that a reasonable person in [his] position would have felt compelled to resign.  <u>E.E.O.C. v. Kohl's Dept. Stores, Inc.</u>, 774 F.3d 127, 134 (1st Cir. 2014) (citing <u>Suarez v. Pueblo Int'l, Inc.</u>, 229 F.3d 49, 54 (1st Cir. 2000)).  "In other words, work conditions must have been so intolerable that [Ayele's] decision to resign was 'void of choice or free will'—that [his] only option was to quit."  <u>Id.</u> (citing <u>Torrech-Hernandez v. Gen. Elec. Co.</u>, 519 F.3d 41, 50 (1st Cir. 2008)).  "This standard is entirely objective—we do not put weight on the employee's subjective beliefs, 'no matter how sincerely held.'"  <u>Id.</u>  Here, the Amended Complaint does not contain any facts that would plausibly give rise to the kind of intolerable work conditions necessary to establish a constructive discharge claim.  Accordingly, I also recommend dismissal of Ayele's retaliation claim.

E.     <u>Ayele Has Failed To State A Claim Of Breach Of Contract</u>

Finally, Ayele brings a breach of contract claim based on the reduction of his work hours.

See AC at p. 4 ("Statutes for the Claim"); Docket No. 46 at 14-15.  "To prevail on a claim for breach of contract, a plaintiff must demonstrate that there was an agreement between the parties; the agreement was supported by consideration; the plaintiff was ready, willing, and able to perform his or her part of the contract; the defendant committed a breach of the contract; and the plaintiff suffered harm as a result." Bulwer v. Mount Auburn Hosp., 473 Mass. 672, 690 (2016) (citation omitted).  "To survive a motion to dismiss, a plaintiff must do more than allege, in a conclusory manner, that defendant breached a contractual duty." Haglund v. Estee Lauder Cos., Inc., 466 F.Supp.3d 292, 298 (D. Mass. 2020) (Gorton, J.) (citing Buck v. Am. Airlines, Inc., 476 F.3d 29, 38 (1st Cir. 2007)).  "Instead, a plaintiff must describe, with 'substantial certainty,' the specific contractual promise that defendant breached." Id. (citations omitted).

Ayele has failed to sufficiently allege a breach of contract based on the reduction of hours because the Conditions of Employment plainly state that he agreed to accept any reasonable change in work hours.  See Docket No. 25-6 at 2.  To the extent that he intends to bring a claim for breach of contract against Ryba and Allard, he has failed to sufficiently allege a contract between him and either of them.  Accordingly, Ayele's breach of contract claim should also be dismissed.

## F.    This Case Should Be Reassigned To Judge Young For Dismissal

Ayele is a frequent litigant in this district.  This action is his eleventh pro se lawsuit in the District of Massachusetts.[14]  On October 5, 2005, in another case filed by Ayele in this district,

---

[14] See Ayele v. Allright Boston, et al., No. 1:96-cv-12201-REK; Ayele v. Standard Parking Co., et al., No. 1:96-cv-10267-NG; Ayele v. Boston University, et al., No. 1:01-cv-12175-MLW; Ayele v. Barton Protective Services, Inc., No. 1:03-cv-11249-NG; Ayele v. Allied Security Company, Inc., No. 1:04-cv-12216-RCL; Ayele v. Consignia Security Co., No. 1:04-cv-12217-PBS; Ayele v. U.S. Security Associates, Inc., No. 1:05-cv-11273-WGY; Ayele v. Educational Credit Management Corporation, No. 1:12-cv-11005-NMG; Ayele v. G2 Secure Staff, LLC, No.

Judge Young granted the defendants' motion for summary judgment and ordered that any further cases filed by Ayele "be drawn to Judge Young.  If it has no merit the Court will enjoin the Plaintiff from filing cases in the USDC."  See Ayele v. U.S. Security Associates, Inc., No. 1:05-cv-11273-WGY (ECF Entry dated 10/5/05).  In light of the findings herein regarding the merits of Ayele's claims,[15] this Court recommends that the case be reassigned to Judge Young for dismissal.

IV.    RECOMMENDATION

       For the foregoing reasons, this Court recommends that this case be reassigned to Judge Young, that he deny Ayele's motion to compel an answer or to enter default judgment as to defendants Mayflower and Plante, that he grant the Defendants' motions to dismiss, and that he dismiss the Amended Complaint in its entirety.

V.    REVIEW BY DISTRICT JUDGE

       The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written

---

1:17-cv-10417-RGS; Ayele v. Delta Airlines, Inc., No. 1:18-cv-10617-DJC.  See also Mekonnen v. OTG Mgmt., LLC, 394 F.Supp.3d 134, 142 n.1 and Appendix (D. Mass. 2019).

[15] This Court notes that two of the defendants, Mayflower Medicinal, Inc. and Andrew Plante, have not entered an appearance in the case or filed a responsive pleading.  It appears that service on these defendants was not proper.  See Docket No. 13; Cichocki v. Massachusetts Bay Community College, 174 F.Supp.3d 572, 576 (D. Mass. 2016) (neither the federal rules nor the Massachusetts rules permit service upon an individual by mail at his place of employment); Richardson v. Downing, 209 F.R.D. 283, 284 (D. Mass. 2002) (service of corporate defendant by mail not good service).  For that reason, this Court recommends that Judge Young also deny Ayele's motion seeking an order compelling an answer or entering default judgment as to Mayflower and Plante (Docket No. 13).  In addition, the Amended Complaint does not state a claim against either defendant.  Neither Mayflower nor Plante were Ayele's employers and, other than stating, in a conclusory fashion, that they "aid[ed] and abet[ed]" SSC, AC at p. 20, Ayele has not alleged any wrongdoing by them.  Accordingly, I also recommend dismissal of the Amended Complaint against all defendants.

objections thereto with the Clerk of this Court within 14 days of service of this Report and

Recommendation.  The written objections must specifically identify the portion of the proposed

findings, recommendations, or report to which objection is made, and the basis for such

objections.  <u>See</u> Fed. R. Civ. P. 72.  The parties are further advised that the United States Court

of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P.

72(b) will preclude further appellate review of the District Court's order based on this Report

and Recommendation.  <u>See</u> <u>Phinney v. Wentworth Douglas Hospital</u>, 199 F.3d 1 (1st Cir. 1999);

<u>Sunview Condo. Ass'n v. Flexel Int'l, Ltd.</u>, 116 F.3d 962 (1st Cir. 1997); <u>Pagano v. Frank</u>, 983

F.2d 343 (1st Cir.1993).

<div style="margin-left:40%">

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge

</div>